**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0005-17T4

M.P.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES and UNION COUNTY
BOARD OF SOCIAL SERVICES,

     Respondents-Respondents.

_____

Submitted December 10, 2018 – Decided December 20, 2018

Before Judges Fasciale and Rose.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

SB2, Inc., attorneys for appellant (John P. Pendergast and Laurie M. Higgins, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney

General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner M.P., by her designated authorized representative, Sharon Phillips-South of Cranford Rehabilitation & Nursing Center (Cranford Rehab),[1] appeals from the July 5, 2017 final agency decision of the Director of the Division of Medical Assistance and Health Services (DMAHS) denying her application for Medicaid benefits. In doing so, the DMAHS adopted the initial decision of an administrative law judge (ALJ), which affirmed the decision of the Union County Board of Social Services (UCBSS). We affirm.

The facts are essentially undisputed. On July 10, 2015, M.P. was admitted to Cranford Rehab. Within one month, M.P.'s daughter and general power of attorney (POA), C.V., designated Phillips-Smith as M.P.'s authorized representative who, in turn, completed a Medicaid application on behalf of M.P. Pertinent to this appeal, the application indicated that M.P. was not a named insured on any life insurance policies.

Nonetheless, while processing M.P.'s application, the UCBSS determined M.P. owned two life insurance policies (policies), issued by Prudential Insurance

---

[1] For simplicity, we refer to petitioner as M.P.

A-0005-17T4

Company, in the amounts of $7,124.72 and $2,929.71 (cash values). Because the policies exceeded the $2,000 resource limit for Medicaid recipients,[2] the UCBSS denied M.P.'s application.

On May 27, 2016, M.P. requested a fair hearing and the matter was transmitted to the Office of Administrative Law as a contested case. Less than two weeks later, the policies were surrendered for their cash values, and Prudential issued two checks payable to M.P. On August 24, 2016, M.P. died.

On September 29, 2016, C.V. executed a document entitled, "Assignment & Transfer of Excess Resources" (Assignment), agreeing to "irrevocably assign[] and transfer[] all . . . rights, title and interest to such of [M.P.'s] assets [including the policies] as may be necessary to qualify her for medical assistance." The final paragraph of the Assignment provides:

> THIS ASSIGNMENT shall be deemed effective as of Resident's [d]ate of [a]dmission to Cranford [Rehab] and shall be binding on [M.P.,] her heirs, administrators, executors and/or assigns.

---

[2] N.J.A.C. 10:71-4.5(c) ("Resource maximum for an individual: participation in the program shall be denied or terminated if the total value of an individual's resources exceeds $2,000.").

On January 25, 2017, Phillips-Smith executed an affidavit "ratify[ing] the actions of . . . [C.V.] in executing the Assignment." In her affidavit, Phillips-Smith deemed the Assignment "effective as of its execution date of September 29, 2016." Sometime thereafter, C.V. endorsed both insurance checks to Cranford Rehab.

On May 22, 2017, ALJ John P. Scollo issued a well-reasoned written decision, affirming the denial of M.P.'s Medicaid application because M.P.'s resources exceeded the $2,000 statutory limitation. Specifically, the ALJ dismissed Cranford Rehab's contention that the "historical facts changed[,]" reasoning:

> As a matter of historical fact, on the calendar date of July 10, 2015[,] M.P. actually owned the subject life insurance policies and, of course, their cash value.
>
> . . . .
>
> . . . Cranford [Rehab] disregards the fact that up to the moment of the signing of the []Assignment . . . , there was nothing that could have prevented M.P. (or her [e]state) from using the cash from her life insurance[ policies] at any time she/it wanted to do so. The resources were available to M.P. (or her estate) pursuant to N.J.A.C. 10:71-4.1(c) because she had the "right, authority, or power" to liquidate [them].

A-0005-17T4

Further, the ALJ rejected Cranford Rehab's misapplication of general contract law principles. In particular, although the ALJ recognized that "parties to a contract may, by the terms of their contract, choose and establish a different start date for their obligations (duties) and rights[,]" the UCBSS was not a party to the contract here. Accordingly, the ALJ determined the retroactive date set forth in the Assignment did not bind the UCBSS. The ALJ elaborated:

> [Cranford Rehab and C.V.]—quite conveniently— chose June 1, 2015[3] (the month before M.P.'s admission to . . . Cranford [Rehab]) as the effective date of her transfer of resources so as to reduce M.P.'s resources to zero, thus purportedly meeting the resource eligibility requirements, and thereby enabling her to demand Medicaid benefits. The assertion of their purported right to choose the effective date of the transfer of resources attempts to parlay the . . . principle of law [that "there is no per se limitation in the right of parties to have a contract apply retroactively"[4]] into a tool . . . that would allow any similarly-situated group of individuals to vitiate the monetary eligibility regulations set forth in N.J.A.C. 10:71-4.1 [to -]4.5 by simply back-dating the "effective date" of any applicant's transfer of resources. The argument attempts, but fails, to convince [the ALJ] that this is a sound interpretation or application of the above-quoted

---

[3] M.P.'s date of admission, presumably July 10, 2015, in the first paragraph of the Assignment is crossed out and replaced with the handwritten notation, "June 2015 CV."

[4] Bowen Eng'g v. Estate of Reeve, 799 F. Supp. 467, 486 (D.N.J. 1992).

principle and fails to convince [the ALJ] that the regulations are so easy to skirt.

Finally, the ALJ declined to address the UCBSS's argument that the POA expired upon the death of M.P. and, as such, C.V. was not authorized to sign the Assignment one month later, and Cranford Rehab's response that Phillip-Smith's affidavit ratified the POA.

On July 5, 2017, the DMAHS adopted the ALJ's decision. Among other things, the DMAHS noted, "While the record is silent about other accounts, [M.P.'s] ownership of the Prudential [l]ife [i]nsurance policy worth $2,979.71 is sufficient to find her resource ineligible. There is no legal basis for Cranford [ Rehab]'s position that a document executed a month after she died has any effect on [M.P.]'s assets."

On appeal, M.P. renews her argument that the DMAHS improperly denied her Medicaid benefits by refusing to recognize June 1, 2015, as the retroactive date of the Assignment.[5]

---

[5] In her reply brief, M.P. addresses the DMAHS's point that Cranford Rehab lacks authority to pursue the present appeal because M.P.'s death terminated Phillips-Smith's appointment as M.P.'s designated authorized representative. Like the ALJ, we find "that is not the determinative issue" here and similarly decline to consider the claim.

A-0005-17T4

"An administrative agency's decision will be upheld 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (alteration in original).

"Medicaid is a federally-created, state-implemented program that provides medical assistance to the poor at the expense of the public." In re Estate of Brown, 448 N.J. Super. 252, 256 (App. Div.) (internal quotation marks omitted), certif. denied, 230 N.J. 393 (2017). To receive federal funding, the State must comply with all federal statutes and regulations. Harris v. McRae, 448 U.S. 297, 301 (1980).

In New Jersey, the DMAHS administers the Medicaid program pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. The county welfare boards evaluate eligibility. N.J.S.A. 30:4D-7(a); N.J.A.C. 10:71-1.5, -2.2(c). "In order to be financially eligible, the applicant

must meet both income and resource standards." Brown, 448 N.J. Super. at 257 (citing N.J.A.C. 10:71-3.15). Thus, the county boards act for the DMAHS as a "gatekeeper to prevent individuals from using Medicaid to avoid payment of their fair share for long-term care." W.T. v. Div. of Med. Assistance & Health Servs., 391 N.J. Super. 25, 37 (App. Div. 2007).

M.P. applied for institutional level Medicaid benefits while she was residing in a nursing home. The DMAHS grants such benefits pursuant to the Medicaid Only program, N.J.A.C. 10:71-1.1 to -9.5. Among the eligibility requirements, an individual seeking these benefits must have limited financial eligibility. See N.J.A.C. 10:71-1.2(a). "All includable income and resources must fall below certain limits in order for an applicant to be deemed eligible for Medicaid benefits." E.S., 412 N.J. Super. at 347 (citing 42 U.S.C. §1396a(a)(10)(A)). Specifically, "[t]he regulations governing an individual's eligibility for Medicaid reimbursement of nursing home costs provide that in order for an individual to participate in the Medicaid Only Program, the value of that individual's resources may not exceed $2,000." H.K. v. State, 184 N.J. 367, 380 (2005) (footnote omitted) (citing N.J.A.C. 10:71-4.5(c)).

Applying these principles here, we are satisfied the DMAHS's decision is supported by sufficient credible evidence in the record as a whole, R. 2:11-

3(e)(1)(D), and that M.P.'s arguments to the contrary are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Accordingly, we affirm for the reasons set forth in the final agency decision, adopting ALJ Scollo's comprehensive initial decision.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0005-17T4